No. 13-15633

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

―――――――――――――

PADRES HACIA UNA VIDA MEJOR and
EL PUEBLO PARA EL AIRE Y AGUA LIMPIO,

Plaintiffs-Appellants,

v.

GINA McCARTHY, Administrator of the U.S. Environmental Protection
Agency and U.S. ENVIRONMENTAL PROTECTION AGENCY,

Defendants-Appellees.

―――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

―――――――――――――

**BRIEF FOR THE APPELLEES**

―――――――――――――

STUART F. DELERY
  *Assistant Attorney General*

BENJAMIN M. WAGNER
  *United States Attorney*

MARLEIGH D. DOVER
CHARLES W. SCARBOROUGH
(202) 514-1927
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7244*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, DC 20530-0001*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE.............................................................2

RELEVANT STATUTES AND REGULATIONS....................................2

STATEMENT OF THE CASE..............................................................2

STATEMENT OF FACTS ...................................................................3

    A.   Statutory and Regulatory Background ...................................3

    B.   Factual Background and Prior Proceedings .........................4

SUMMARY OF ARGUMENT .............................................................12

STANDARD OF REVIEW .................................................................15

ARGUMENT ...................................................................................16

THE DISTRICT COURT PROPERLY DIMESSED ALL OF PLAINTIFFS'
UNREASONABLE DELAY CLAIMS AFTER THE EPA ACTED ON
THEIR DISCRIMINATION COMPLAINT. .................................................16

    A.   The District Court Properly Dismissed Plaintiffs' Claim For
        Injunctive Relief on  Mootness, Ripeness, and Standing
        Grounds .........................................................................16

    B.   The District Court Properly Dismissed Plaintiffs' Claim For
        Declaratory Relief ..........................................................21

        1.   The District Court Had Discretion To Dismiss The Claim
            For Declaratory Relief After Dismissing All Other Claims .....22

        2.   The District Court Had Discretion To Dismiss The Claim
            For Declaratory Relief On The Ground That No Useful
            Purpose Would Be Served By Granting Such Relief ..............23

CONCLUSION ..................................................................................28

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174
    (9th Cir. 2010) ....................................................................... 18, 20

*In re Am. Fed. of Gov't Employees*, 837 F.2d 503 (D.C. Cir. 1988) ....................... 24

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009) ............................................ 7

*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) ................................. 22

*Center for Biological Diversity v. Lohn*, 511 F.3d 960 (9th Cir. 2007) ................. 17

*Conservation Force, Inc. v. Jewell*, 733 F.3d 1200 (D.C. Cir.  2013) ............. 18, 19

*Council v. U.S. Forest Serv.*, 593 F.3d 923 (9th Cir. 2010) ..................................... 17

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ............................................. 16

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316
(D.C. Cir. 2009) ......................................................................................................... 19

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ......................... 22

*Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008
    (9th Cir. 2012) ...................................................................................................... 16

*Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923
 (9th Cir. 2010)................................................................................17

*Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312 (Fed. Cir. 2004)......................17

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522 (9th Cir. 2008) ... 13, 15, 22, 23

*Milwaukee Police v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921
 (7th Cir. 2013)............................................................................... 16

*NLRB v. U.S. Postal Serv.*, 486 F.3d 683 (10th Cir. 2007) ...................................17

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004).......................12

*Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169
 (9th Cir. 2009) ........................................................................ 4, 9, 14, 15, 26

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ..... 15

*Sexton v. NDEX West, LLC*, 713 F.3d 533 (9th Cir. 2013) .....................................15

*Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163
 (9th Cir. 1998) ...............................................................................22, 23

*Spencer v. Kemna*, 523 U.S. 1 (1998) ........................................................ 10

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir.1995)....................21

*Texas v. United States*, 523 U.S. 296 (1998) ............................................... 7

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ...... 18

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).................................................15, 22

*Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989)............................18

**Statutes:**

Title VI of the Civil Rights Act of 1964:

42 U.S.C. § 2000d .................................................................3

5 U.S.C. § 706(1) ........................................................ 1, 2, 6, 10, 12, 17

28 U.S.C. § 1291 ................................................................ 1
28 U.S.C. § 1331 ................................................................ 1
28 U.S.C. § 2201(a) .......................................................... 22

**Rules:**

Fed. R. App. P. 43(c)(2) ..................................................... 1
Fed. R. Civ. P. 12(h)(3) .................................................... 21

**Regulations:**

40 C.F.R. § 7.115 ....................................... 5, 7, 8, 10, 11, 23, 27
40 C.F.R. § 7.115(c) .................................... 5, 9, 10, 14, 24, 26
40 C.F.R. § 7.115(c)(1) .................................................. 4
40 C.F.R. § 7.120(d)(1)(i) .............................................. 3
40 C.F.R. § 7.130(a) ..................................................... 4
40 C.F.R. § 7.35(b) ...................................................... 3
40 C.F.R. Part 7 .......................................................... 3

**Miscellaneous:**

*See http://www.epa.gov/ocr/TitleVIcases/decisions/index.html* ...............................5

No. 13-15633

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

PADRES HACIA UNA VIDA MEJOR and
EL PUEBLO PARA EL AIRE Y AGUA LIMPIO,
Plaintiffs-Appellants,

v.

GINA McCARTHY,[1] Administrator of the U.S. Environmental Protection
Agency and U.S. ENVIRONMENTAL PROTECTION AGENCY,
Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

_____

BRIEF FOR THE APPELLEES

_____

## JURISDICTIONAL STATEMENT

Plaintiffs asserted a claim of "unreasonable delay" under 5 U.S.C. § 706(1) and invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1346.  *See* Appellant's Excerpts of Record ("ER") at 233 (Compl. ¶ 8).  The district court dismissed plaintiffs' complaint, ER 1-18, and entered final judgment on February 5, 2013.  ER 22.  Plaintiffs filed a timely notice of appeal on April 2, 2013.  ER 19.  This Court has jurisdiction under 28 U.S.C. § 1291.

_____

[1] Pursuant to Fed. R. App. P. 43(c)(2), the caption should be amended to reflect the automatic substitution of Gina McCarthy, the current EPA Administrator.

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed plaintiffs' claim of "unreasonable delay" under 5 U.S.C. § 706(1) after the Environmental Protection Agency ("EPA") acted on the discrimination complaint plaintiffs alleged was uunreasonably delayed.

## RELEVANT STATUTES AND REGULATIONS

Pertinent authorities are reproduced in the addendum to Appellant's brief.

## STATEMENT OF THE CASE

Plaintiffs are two associations of individuals who reside in Buttonwillow and Kettleman City, California, cities with a majority Latino population and a substantial percentage of residents below the poverty line.  In 1994, plaintiffs filed a complaint with the EPA's Office of Civil Rights ("OCR") alleging discrimination based on national origin by various California agencies in the permitting and oversight of three hazardous waste disposal facilities, including facilities in Buttonwillow and Kettleman City.  After the EPA did not issue a final decision on their complaint for many years, plaintiffs filed an action in district court under 5 U.S.C. § 706(1), seeking to compel agency action unlawfully withheld or delayed.

On August 30, 2012, the EPA adjudicated plaintiffs' discrimination complaint. The agency issued a dismissal letter and a 148-page Investigative Report supporting its findings.  Because the EPA had completed the action plaintiffs sought to compel under Section 706(1), the district court dismissed their unreasonable delay claim on a combination of mootness, standing, and ripeness grounds.  This appeal followed.

## STATEMENT OF FACTS

### A.      Statutory and Regulatory Background

Title VI of the Civil Rights Act of 1964 prohibits discrimination by institutions

that receive federal funds.  42 U.S.C. § 2000d.  Section 601 provides that no person

shall, "on the ground of race, color, or national origin, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination under any program or

activity" covered by Title VI.  *Id.*  Section 602 authorizes federal agencies that provide

federal funding assistance to issue regulations to enforce the provisions of Title VI.

*Id.* § 2000d-1.  Among other things, Section 602 requires agencies to create a

regulatory framework for processing discrimination complaints.  *Id.*

Pursuant to that mandate, the EPA has promulgated comprehensive

regulations implementing Title VI.  *See* 40 C.F.R. Part 7 (Addendum to Applts' Br.).

In pertinent part, those regulations prohibit recipients of federal funds from engaging

in activities "which have the effect of subjecting individuals to discrimination because

of their race, color, national origin, or sex."  40 C.F.R. § 7.35(b).  Those regulations

also provide a mechanism for individuals who believe they have been subjected to

discrimination under Title VI to file administrative complaints with the EPA.  *See* 40

C.F.R. Subpart E.  When a person files a complaint, the regulations specify that EPA's

Office of Civil Rights "will review" that complaint "for acceptance, rejection, or

referral to the appropriate federal agency" within 20 days.  40 C.F.R. § 7.120(d)(1)(i).

If OCR accepts the complaint for processing, it must issue preliminary findings and

3

recommendations for achieving compliance "[w]ithin 180 calendar days from the start of the compliance review or complaint investigation." 40 C.F.R. § 7.115(c)(1). *See also Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1171 (9th Cir. 2009) (noting regulatory deadline). If EPA's efforts at achieving voluntary compliance do not succeed and the agency finds that a recipient has violated Title VI, EPA "may terminate or refuse to continue assistance." 40 C.F.R. § 7.130(a). If an investigation reveals no violation, however, OCR will dismiss the complaint and notify both the complainant and the funding recipient of that dismissal. 40 C.F.R. § 7.130(a).

### B.    Factual Background and Prior Proceedings.

1. In December 1994, plaintiffs, Padres Hacia Una Vida Mejor and El Pueblo Para El Aire Y Agua Limpio, filed an administrative complaint with the EPA alleging discrimination based on national origin in the permitting and oversight of California's three hazardous waste disposal facilities by the California Department of Toxic Substances Control ("DTSC") and other state agencies. Plaintiffs Padres and El Pueblo are associations whose members live in Buttonwillow and Kettleman City, California respectively, two communities with predominantly Latino populations.[2]

Although the EPA accepted plaintiffs' complaint for investigation on July 18, 1995, the agency did not issue a final decision on that complaint for many years. *See* ER 2-3 (noting inactivity by EPA). As a result, plaintiffs filed this action on June 30,

---

[2] Although both El Pueblo and Padres were plaintiffs in district court, Padres did not appeal, and El Pueblo is thus the lone appellant here. *See* Applt. Br. 3 n.1.

4

2011, alleging that the EPA had unlawfully withheld action and unreasonably delayed processing their discrimination complaint. ER 242. Specifically, plaintiffs alleged that "EPA has violated, and continues to violate, 40 C.F.R. § 7.115(c) because EPA failed to issue preliminary findings and recommendations for voluntary compliance to the recipient in response to Padres' Title VI complaint within 180 days of EPA's initiation of the complaint investigation." *Id.* (Compl. ¶ 49). Plaintiffs also alleged that EPA's conduct was "part of a pattern and practice of illegal agency conduct." *Id.* (Compl. ¶ 51). As a remedy for these violations, plaintiffs sought a declaration that the EPA's failure to comply with regulatory deadlines "constitutes agency action unlawfully withheld and/or unreasonably delayed under the Administrative Procedure Act," and "an injunction compelling EPA to process Padres' current and any future Title VI complaints in compliance with the timelines set forth in 40 C.F.R. § 7.115." ER 242.

The EPA filed an answer to plaintiffs' complaint, generally denying the allegations therein, ER 222-29, and the parties later filed a joint scheduling report with the court, ER 206-18. Before any further proceedings were conducted in this case, however, the EPA completed its investigation into plaintiffs' Title VI complaint. On August 30, 2012, the EPA issued a decision concluding that there had been no violation of Title VI and a 148-page Investigative Report detailing its investigation and supporting its determination. The EPA's decision and investigative report were part of the record below and are publicly available in the "decisions" section of OCR's web site. *See http://www.epa.gov/ocr/TitleVIcases/decisions/index.html* .

Following OCR's disposition of plaintiffs' administrative discrimination complaint, the EPA moved to dismiss their complaint in district court. ER 203. Specifically, the EPA argued that plaintiffs' request for an injunction directing the EPA to act on their discrimination complaint was moot because there was nothing left for the court to compel. The EPA further argued that no other relief beyond compelling the specific agency action allegedly withheld or delayed was available under 5 U.S.C. § 706(1); that plaintiffs lacked standing to seek prospective injunctive relief regarding hypothetical delays they might be subjected to in the future; and that such a claim was not ripe in any event given the fact-specific nature of "unreasonable delay" claims and the many contingent events that would have to occur before such a claim would be fit for adjudication.

2. On February 5, 2013, after several rounds of supplemental briefing on whether to dismiss plaintiffs' claims, the district court granted the EPA's motion to dismiss. ER 1-18. The court first explained that there was "no dispute that Plaintiffs' claim for an injunction ordering Defendants to presently act on Plaintiffs' Title VI complaint is now moot because Defendants have resolved the complaint." ER 6. The court then held that plaintiffs' request for an injunction directing the EPA to process any future Title VI complaints they might file should be dismissed for lack of standing and/or ripeness. ER 6-14. Finally, the court dismissed plaintiffs' claim for declaratory relief on the ground that no useful purpose would be served by a declaration that the EPA violated applicable deadlines in the past. ER 14-17.

a.  The district court did not hold that plaintiffs' request for an injunction regarding *future* Title VI complaints they might file was moot, but instead held that plaintiffs lacked standing to seek such relief and that such a claim was not ripe for review.  ER 6-14.  The court first cited numerous cases holding that a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  ER 7 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998), and *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009)).  The court then outlined the many ways in which plaintiffs' request for prospective relief regarding hypothetical, future Title VI complaints depended on speculation and contingencies.  ER 8-13.

Noting that "any injury relating to § 7.115 depends largely upon the likelihood of Plaintiffs filing another Title VI complaint," the district court concluded that the sole evidence plaintiffs had offered on this point – the declaration of Maricela Mares-Alatorre, ER 219-21 – was insufficient to "show that plaintiffs are faced with a future violation of § 7.115 that is actual and imminent or certainly impending."  ER 8.  As an initial matter, the court stressed that the declaration "does not show that Plaintiffs intend to or certainly plan on filing another Title VI complaint" but instead "speaks more in possible or hypothetical terms" by declaring only that plaintiffs "may" file another lawsuit.  *Id.*  The court also stressed that the future Title VI complaint described by Ms. Mares-Alatorre "is completely dependent upon DTSC issuing a new operating permit that allows Kettleman Hills to expand."  *Id.*  Because "it is entirely

7

possible that DTSC may not issue a new permit that allows for expansion," and expansion provides the only basis for any future Title VI complaint, the court held that "[t]he future Title VI complaint is based on a 'possible future' event and is hypothetical and speculative." ER 9 (citations omitted).

The district court also found that plaintiffs' hypothetical, future injuries were not imminent or impending (as required to establish standing and ripeness) because, even if DTSC approved a new permit and plaintiffs filed a new discrimination complaint, it was not at all clear that plaintiffs would encounter delays in the EPA's processing of such a complaint. ER 9-13. As the court summarized, "the history of this case and the changes that are being implemented by Defendants further indicate that a violation of § 7.115 is not actual and imminent or certainly impending." ER 9.

To support that finding, the court cited extensively from the declaration of OCR director Rafael DeLeon, ER 132-44, which explained, among other things, "that the work that OCR has already performed on Plaintiff's Title VI complaint would substantially reduce the amount of time needed to process a future complaint related to the expansion of the Kettleman Hills Dump." ER 10 (citing DeLeon Decl. ¶¶ 26-29). While noting that the DeLeon declaration indicated "that EPA/OCR on a median level is not meeting § 7.115's deadline," ER 11, the court found that the declaration was "probative" and "shows that substantial and significant work was performed in resolving Plaintiffs' Title VI complaint, and much of that work would be relevant, helpful, and directly applicable to resolving Plaintiffs' future Title VI

8

complaint." ER 12.  The court also found that the DeLeon declaration showed "that OCR/EPA are hiring staff and continuing to implement and develop changes," and that "[t]he trend identified from September 2009 to November 2012 is for faster resolution of complaints."  *Id.*  Thus, citing "the combination of changes that are being made at OCR, the trend of faster resolution times, and especially the work that has already been performed relating to Kettleman Hills," the district court concluded that "it does not appear that Plaintiffs are facing an actual and imminent or certainly impending threat of Defendants violating § 7.115(c) in a future Title VI complaint." ER 12-13.[3]

Finally, the district court distinguished this Court's decision in *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169 (9th Cir. 2009), on the ground that the likelihood of future injury from delays by EPA was much more certain in that case than in this one.  ER 13.  The court explained that *Rosemere* held that a claim of unreasonable delay by the EPA was not moot (and was also ripe) where the plaintiff organization submitted a declaration indicating "that it intended to refile a specific discrimination complaint in the near future."  ER 13-14.  In contrast, the court reiterated that plaintiffs' claim of hypothetical, future injury in this case was much more contingent and speculative.  Among other things, the court stressed that

---

[3] At the outset, the court made clear that it was "consider[ing] DeLeon's declaration as part of the standing and ripeness analyses," and was "express[ing] no opinion on the issue of the voluntary cessation exception to mootness."  ER 9 n.3.

9

"Plaintiffs have not indicated that they actually intend to file another Title VI complaint"; that any "future Title VI complaint would relate to an expansion of the Kettleman hills dump," which may never occur; that any expansion is "dependent upon further administrative activity and approval," which is not "in any way imminent"; and that "even if expansion does occur, Mares-Alatorre indicates that Plaintiffs 'may,' not 'will' or 'likely will,' file a Title VI complaint." ER 13. In short, the court summarized, "[t]he future Title VI complaint identified by Plaintiffs has layers of contingency that was simply absent from the future complaint identified by Rosemere Association." ER 14. Thus, the court dismissed "Plaintiffs' request for an injunction that pertains to all future Title VI complaints that they may file . . . due to lack of standing and/or ripeness." *Id.*[4]

b. The district court next dismissed plaintiffs' request for a declaratory judgment regarding the EPA's past failure to adjudicate plaintiffs' Title VI complaint within Section 7.115's deadline. ER 14-17. Stressing that courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," ER 14 (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (internal quotes omitted)), the district court concluded that granting plaintiffs' request

---

[4] In dismissing that claim, the court noted that it had "received supplemental briefing from the parties on the issue of whether any courts have held that an injunction requiring compliance in future cases that a plaintiff may file is available under § 706(1)," but declared that there was no need to address this issue given its dismissal of that claim on standing and ripeness grounds. ER 14 n.6.

for a declaration that the EPA unlawfully withheld or unreasonably delayed in adjudicating their Title VI complaint would not "serve any useful purpose or provide any effective relief." ER 15.  Specifically, the court emphasized that the requested declaration "cannot serve as the predicate for a mandatory injunction for Defendants to act on Plaintiffs' Title VI complaint, because that complaint has been completely resolved." *Id.*  The court also noted that "declaring that Defendants violated § 7.115 with respect to Plaintiffs' previous Title VI complaint merely speaks to a past event that is unique to that particular Title VI complaint" and would not be relevant in any future action to compel agency action withheld or delayed.  ER 15-16.  Moreover, the court observed that a declaration regarding past delays was unnecessary, and would serve no purpose, because "Defendants will not be able to contest that it took an astounding 17 years to meet the 180 day deadline in Plaintiffs' prior Title VI complaint, irrespective of any declaration."  ER 16.

The court also rejected plaintiffs' argument that a declaratory judgment would serve a different purpose – confirming that "§ 7.115(c) imposes a non-discretionary mandatory deadline that must be met." *Id.*  The court explained that plaintiffs' complaint only alleged a "failure to comply with § 7.115(c) . . . not a failure to acknowledge a non-discretionary mandatory duty," and that the EPA had never denied the existence of such a duty.  ER 17 & n.8.  Thus, having found that "no useful purpose" would be served by granting declaratory relief, the court held that such relief was "not appropriate" and dismissed plaintiffs' claim. *Id.*

## SUMMARY OF ARGUMENT

Federal subject matter jurisdiction depends on the existence of a live case or controversy.  Here, there is no live controversy between the parties because the EPA has acted on plaintiffs' discrimination complaint, and there is nothing more for a court to do.  Because plaintiffs brought this suit solely under Section 706(1) of the Administrative Procedure Act, they may only seek to compel a "discrete action" that the agency was "required to take."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  They may not seek wholesale improvements in the EPA's system-wide adjudication of Title VI complaints in the guise of an action for a declaratory judgment chiding EPA for past delays.  *Id.* at 65-67.

Likewise, plaintiffs cannot prospectively challenge hypothetical, future delays they might suffer in the event that (1) the California DTSC issues new permits for the expansion of toxic waste facilities that affect plaintiffs' communities, (2) plaintiffs file new discrimination complaints challenging those permits, and (3) EPA again fails to act on those complaints in a timely manner.  As the district court properly recognized, plaintiffs' speculation about the possibility of future injury is insufficient to establish standing, and their prospective claims of "unreasonable delay" are not ripe for review because they rest on a parade of contingencies that might never occur.  The court thus properly dismissed plaintiffs' claims for both an "obey-the-law" injunction directing EPA to comply with all applicable regulatory deadlines in future cases and a broad declaration that EPA has failed to comply with such deadlines in the past.

12

On appeal, El Pueblo has expressly abandoned any claim of error with respect to the district court's disposition of its claim for prospective injunctive relief. *See* Applt. Br. 8 n.2. El Pueblo's sole contention in this Court is that the district court erred in dismissing its request for a declaration that the EPA unreasonably delayed in adjudicating its prior discrimination complaint. *Id.* at 20-28. But that argument ignores the broad discretion district courts have to dismiss claims for declaratory relief when all other claims have been dismissed, and it also rests on a misunderstanding of the bases on which the district court dismissed that claim.

As explained above, the district court held that plaintiffs' request for an order directing EPA to act on their discrimination complaint was moot (a holding that has never been challenged), and that plaintiffs' request for an injunction pertaining to any future Title VI complaints they might file failed on both standing and ripeness grounds (a holding El Pueblo has not challenged on appeal). In light of its disposition of those claims, the court then held that "no useful purpose" would be served by entertaining plaintiffs' claim for declaratory relief. ER 17. Having concluded that all the other claims should be dismissed on jurisdictional grounds, the district court had ample discretion to dismiss the lone remaining claim for declaratory relief. Because the dismissal of a claim for declaratory relief is reviewed solely for abuse of discretion, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 529 (9th Cir. 2008), and El Pueblo has made no argument under that deferential standard in its opening brief, El Pueblo has effectively waived any challenge to the disposition of its claim for declaratory relief.

13

Moreover, even assuming El Pueblo preserved an argument that the district court abused its discretion in dismissing the claim for declaratory relief, that argument fails because it rests on a mischaracterization of the grounds on which the district court disposed of that claim. Although El Pueblo repeatedly asserts that the district court held that the "claim for declaratory relief was mooted by EPA's resolution of El Pueblo's Title VI complaint," Applt. Br. 21, the court did not dismiss that claim on mootness grounds. Instead, as explained above, the court dismissed that claim on the merits, holding that such relief was "not appropriate" because it would serve "no useful purpose." ER 17. In making that determination, the court properly recognized that the same combination of factors that mooted plaintiffs' request for an order directing EPA to do something it had already done likewise counseled strongly against issuing a purely advisory declaration that EPA had previously failed to comply with the deadline in 40 C.F.R. § 7.115(c). Because the district court did not hold that the claim for declaratory relief was moot, El Pueblo's extensive argument that the court erroneously relieved the EPA of its "heavy burden" of establishing mootness, *see* Applt. Br. 26-36, misses the mark.

For similar reasons, El Pueblo's heavy reliance on *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169 (9th Cir. 2009), is also misplaced. In *Rosemere*, this Court held that a district court erred in dismissing a claim of "unreasonable delay" on mootness grounds (after the EPA rendered a decision on plaintiffs' discrimination complaint) because the EPA had not adequately shown that plaintiffs' claims were moot. Given

14

the declaration by a member of the neighborhood association in that case expressing "its intention to file another complaint with the EPA," *id.* at 1174, this Court concluded in *Rosemere* that plaintiff's requests for declaratory relief and an injunction with respect to future Title VI complaints were not moot. In contrast, the district court in this case dismissed plaintiffs' request for an injunction governing future Title VI complaints on ripeness and standing grounds after examining the many events that made plaintiffs' allegations of possible future injury far more speculative than in *Rosemere*, and then dismissed plaintiffs' request for declaratory relief on the merits ground that it would serve no useful purpose. Thus, despite some factual similarities between *Rosemere* and this case, the Court's legal analysis in *Rosemere* is largely inapposite. The judgment of the district court should accordingly be affirmed.

## STANDARD OF REVIEW

This Court reviews *de novo* a dismissal for lack of jurisdiction on ripeness or standing grounds. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996). However, factual findings underlying the district court's jurisdictional determinations are reviewed for clear error. *Sexton v. NDEX West, LLC*, 713 F.3d 533, 536 (9th Cir. 2013). The decision whether to grant declaratory relief is reviewed solely for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).

**ARGUMENT**

**THE DISTRICT COURT PROPERLY DISMISSED ALL OF PLAINTIFFS' UNREASONABLE DELAY CLAIMS AFTER THE EPA ACTED ON THEIR DISCRIMINATION COMPLAINT.**

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). This fundamental limitation on judicial authority under Article III is reflected in the interrelated doctrines of standing, ripeness, and mootness. *See, e.g., Milwaukee Police v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 933 (7th Cir. 2013) (discussing "relationship between ripeness and mootness").

### A. The District Court Properly Dismissed Plaintiffs' Claims For Injunctive Relief on Mootness, Ripeness, and Standing Grounds.

In light of the EPA's August 31, 2012 decision dismissing plaintiffs' Title VI complaint, the district court held that plaintiffs' claim of "unreasonable delay" seeking an injunction ordering the EPA to act on that complaint was moot. ER 6. It is common ground on appeal that the district court's ruling on this point was correct: there was nothing further a court could properly order the EPA to do at that juncture. As the district court recognized, it would be utterly pointless to "order Defendants to do the same act twice," *id.*, and that claim was thus moot. *See Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016-17 (9th Cir. 2012) (holding that challenge to superseded agency action was moot because no "effective relief" could

be granted); *Center for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (holding that claims for injunctive and declaratory relief were moot where agency issued proposed rule listing whale as threatened species).

Moreover, the district court also dismissed plaintiffs' request for an injunction regarding hypothetical Title VI complaints they might file at some point in the future on a combination of ripeness and standing grounds. ER 6-14. Assuming, without deciding, that 5 U.S.C. § 706(1) confers authority on courts to issue "obey-the-law" injunctions requiring prospective compliance with applicable deadlines in future cases, *see* ER 14 n.6, the court held that there were too many contingencies to support such a request in this case.[5] Specifically, the district court concluded that plaintiffs' hypothetical future injuries were neither "imminent" nor "impending" (as required to establish standing and ripeness) because they rested upon a parade of speculation and contingencies that might never come to pass, including (1) whether the California DTSC issues new permits for the expansion or creation of a toxic waste facility affecting plaintiffs' communities, (2) whether plaintiffs file new complaints under Title

---

[5] Given its disposition of plaintiffs' claim on ripeness and standing grounds, the district court declined to address whether courts considering claims of "unreasonable delay" under 5 U.S.C. § 706(1) may issue broad injunctions requiring compliance with all regulatory deadlines in future cases. However, we note that such an injunction would not only exceed the limited remedial authority conferred by Section 706(1), *see Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010), but would also run headlong into the established rule that "[i]njunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *NLRB v. U.S. Postal Serv.*, 486 F.3d 683, 691 (10th Cir. 2007). *See also Int'l Recitfier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004).

VI challenging those permits, and (3) whether the EPA fails to act on those complaints in a timely manner.  ER 8-14.

The district court correctly held that the many "layers of contingency" present in this case required dismissal of plaintiffs' request for an injunction relating to future Title VI complaints on standing and ripeness grounds.  ER 14.  Ripeness principles seek "to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989).  Thus, even if an action otherwise presents a case or controversy within the meaning of Article III, a court should not exercise jurisdiction if adjudication would be premature on prudential grounds.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (*en banc*).  As this Court has summarized, "[t]he ripeness inquiry is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (internal quotes and citations omitted).

This case is similar to *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200 (D.C. Cir. 2013), where the D.C. Circuit recently held that claims alleging unreasonable delay by the Fish & Wildlife Service ("FWS") in processing trophy import permits were mooted by the agency's denial of those permits, and that claims regarding FWS' alleged "pattern" of delay were likewise not justiciable because they were not ripe.  As in this case, the plaintiffs in *Jewell* conceded that their specific claims of unreasonable

18

delay with respect to the agency's processing of their import applications were moot, but argued that their claim concerning the FWS's alleged "pattern" of delay was not moot because it sought relief as to an ongoing "policy." *Id.* at 1205. The D.C. Circuit explained, however, that "plaintiffs who challenge an ongoing policy must still demonstrate both that 'the request for declaratory relief is ripe' and that they have 'standing to bring such a forward-looking challenge.'" *Id.* at 1206 (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)). The court then held that plaintiffs could not establish either standing or ripeness because their claim of prospective future injury from the processing of future import permits was far too speculative to justify "entangling" a court in a challenge to a policy that may never have any concrete impact on the plaintiffs. *Id.* Moreover, the D.C. Circuit stressed that withholding judicial review would impose no hardship on the plaintiffs because none of them "has a permit application that is presently being delayed" and none has "a concrete plan to apply for such a permit in the future." *Id.* at 1206-07.

The same considerations that caused the D.C. Circuit to hold that the challenge to the FWS's alleged "pattern" of delay in processing trophy permit applications was not ripe for review in *Jewell* apply with equal force to plaintiffs' claims in this case. As the district court recognized, plaintiffs' request for an injunction regarding EPA's processing of future Title VI complaints is not ripe (and they lack standing to pursue it) because it depends on a chain of contingencies and speculation. At a minimum, it is not at all clear that the California DTSC will issue new permits for the expansion of

19

toxic waste facilities affecting plaintiffs, that plaintiffs will file a new Title VI

complaint challenging any such permit, or that EPA will again delay the processing of

such a complaint, especially given the substantial work that the agency has now

undertaken to resolve plaintiffs' original Title VI complaint, which the district court

found "would be relevant, helpful, and directly applicable to resolving Plaintiffs'

future Title VI complaint." ER 12. In such circumstances, "there is too much

uncertainty standing in the way of effectuation of Plaintiffs' harm to warrant judicial

intervention at this stage." *Addington*, 606 F.3d at 1181. Given the many

contingencies in this case, the district court thus properly found that "Plaintiffs do not

face a threat of actual and imminent harm, or of harm that is certainly impending,"

and dismissed plaintiffs' request for an injunction regarding future Title VI complaints

on standing and ripeness grounds. ER 14.

On appeal, El Pueblo has expressly waived any challenge to "the District

Court's judgment with respect to prospective injunctive relief." Applt. Br. 8 n.2. As a

result, this Court need not reach the question whether the district court's disposition

of that claim was correct. However, the same considerations that caused the district

court to dismiss plaintiffs' claim for future injunctive relief on standing and ripeness

grounds informed its disposition of plaintiffs' claim for declaratory relief. In short,

the district court's unchallenged judgment that plaintiffs' asserted injuries were too

speculative and contingent to establish standing and ripeness for purposes of their

request for an injunction regarding future Title VI complaints provides critical

background and support for the court's discretionary decision to dismiss plaintiffs'

request for declaratory relief in this case – the only component of the district court's

decision that El Pueblo has challenged on appeal.

### B.   The District Court Properly Dismissed Plaintiffs' Claim For Declaratory Relief.

As explained above, El Pueblo has limited its appeal solely to the district

court's dismissal of its request for declaratory relief.  El Pueblo contends that the

district court erred in dismissing that claim because the court failed to apply the

proper legal standards for mootness, Applt. Br. 26-36, and erroneously found that a

declaratory judgment would not provide "effective relief," *id.* at 22-26, 36-37.  As set

forth in section 2 *infra*, however, these arguments rest on the mistaken premise that

the district court dismissed that claim on mootness grounds when in fact the court

simply found that "no useful purpose" would be served by granting the request for

declaratory relief and concluded that such relief "is not appropriate."  ER 17.  That

ruling was correct, and the court had discretion to make that merits determination.[6]

Moreover, the court also had plenary discretion to decline to exercise jurisdiction over

the claim for declaratory relief once it had dismissed the other claims in this case.  As

---

[6] Although the EPA moved to dismiss plaintiffs' claims primarily on grounds that may properly be characterized as "jurisdictional" within the meaning of Fed. R. Civ. P. 12(h)(3), the district court also had ample authority to dismiss for failure to state a claim upon which relief can  be granted. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n. 2 (9th Cir.1995) (treating a motion to dismiss for lack of jurisdiction as one for failure to state a claim).

explained in section 1 *infra*, this Court may affirm the judgment below solely on this basis, without considering any other issues on appeal.

### 1. The District Court Had Discretion To Dismiss The Claim For Declaratory Relief After Dismissing All Other Claims.

It is well-established that district courts may decline to exercise jurisdiction over actions for declaratory relief even though subject matter jurisdiction over such claims may otherwise exist. *See* 28 U.S.C. § 2201(a) (court "may declare the rights and other legal relations of any interested party seeking such a declaration"); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942). As this Court has frequently recognized, the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (internal quotations and citations omitted). *See also Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) (noting that "Congress created an opportunity rather than a duty" for courts to grant relief) (quoting *Wilton*, 515 U.S. at 288). Consistent with the non-obligatory character of declaratory relief, this Court reviews "a district court's decision to decline jurisdiction under the Declaratory Judgment Act for abuse of discretion." *Snodgrass*, 147 F.3d at 1166-67. *See also Leadsinger*, 512 F.3d at 533.

In this case, the district court acted well within its considerable discretion in dismissing plaintiffs' request for declaratory relief where it had already dismissed the claims for injunctive relief on a combination of mootness, standing, and ripeness

grounds.  As this Court has explained, "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass*, 147 F.3d at 1167-68.  If not, the district court has discretion to dismiss the claims for declaratory relief solely on this basis.  *See Leadsinger*, 512 F.3d at 533.  In this case, the dismissal of plaintiffs' claims for injunctive relief – which El Pueblo has not challenged on appeal – gave the district court ample discretion to decline to exercise jurisdiction over plaintiffs' request for a declaratory judgment that EPA's past "failure to comply with the deadline set forth in § 7.115 * * * constitutes agency action unlawfully withheld and/or unreasonably delayed."  ER 242 (prayer for relief A).  Although El Pueblo nowhere acknowledges this deferential standard of review, or the broad discretion courts have to dismiss claims solely for declaratory relief, this Court may affirm the district court's decision solely on this basis.

> ### 2. The District Court Had Discretion To Dismiss The Claim For Declaratory Relief On The Ground That No Useful Purpose Would Be Served By Granting Such Relief.

Aside from the district court's broad discretion to decline to exercise jurisdiction over a claim for declaratory relief simply because it is the lone remaining live claim in a case, the court also had discretion to dismiss that claim on the ground that "no useful purpose" would be served by granting such relief.  ER 17.  As the court explained, an order "declaring that Defendants violated § 7.115 with respect to

Plaintiffs' previous Title VI complaint merely speaks to a past event that is unique to that particular Title VI complaint" and would not be relevant in any future action to compel agency action withheld or delayed. ER 15-16. Furthermore, the court observed, a declaration that the EPA unreasonably delayed in acting on prior Title VI complaints would serve no useful purpose because "Defendants will not be able to contest that it took an astounding 17 years to meet the 180 day deadline in Plaintiffs' prior Title VI complaint, irrespective of any declaration." ER 16. Finally, the court found that a declaratory judgment regarding the EPA's past delays would not clarify the rights and obligations of the parties because plaintiffs' complaint only alleged a "failure to comply with § 7.115(c) . . . not a failure to acknowledge a non-discretionary mandatory duty," and the EPA never denied the existence of such a duty. ER 17 & n.8. Thus, because "Plaintiffs' existing interests are not affected by Defendants' now past conduct, the complaint did not challenge Defendant's interpretation of § 7.115, and the requested declaration cannot serve as the basis of an injunction," ER 17, the district court properly dismissed the request for declaratory relief. *See In re Am. Fed. of Gov't Employees*, 837 F.2d 503, 505 (D.C. Cir. 1988) (declining to issue a declaratory judgment regarding past delays where it "would serve no useful purpose").

On appeal, El Pueblo largely concedes the factual predicates underlying the district court's analysis and nowhere shows that the district court erred in holding that "no useful purpose" would be served by granting plaintiffs' request for declaratory relief. El Pueblo does not explain how a declaratory judgment regarding EPA's past

24

delays in processing Title VI complaints would be relevant in a future action to compel action unreasonably delayed, and it does not explain why a formal declaration of past delays by the EPA would provide more "effective" relief than the district court's informal condemnation of EPA's "astounding" and "extraordinary" delays in the decision it did issue. ER 16-17. *See also* ER 18 n.9 (noting that "17 years to resolve a Title VI complaint is simply deplorable"). Instead, El Pueblo argues primarily that the district court erred when it (1) "determined first that El Pueblo's claim for declaratory relief was mooted by EPA's resolution of El Pueblo's Title VI complaint," and (2) held "that El Pueblo did not set forth sufficient allegations in the original complaint to warrant a declaratory judgment." Applt Br. 21. Neither of these arguments has any merit, and, more fundamentally, neither shows that the district court abused its discretion in dismissing plaintiffs' request for declaratory relief.

As an initial matter, El Pueblo's contention that the district court failed to apply the correct burden of proof in assessing mootness, Applt. Br. 26-36, rests on a mis-characterization of what the court actually did. As explained in detail above, the court did not dismiss the claim for declaratory relief on mootness grounds, but instead on the merits ground that such relief would "serve no useful purpose." ER 17. The court did not mention mootness at any point in its four-page analysis of the claim for declaratory relief, ER 14-17, and the court noted in the portion of its decision addressing the request for an injunction with respect to *future* Title VI complaints – which El Pueblo has not challenged – that it was "[e]xpress[ing] no opinion on the

issue of the voluntary cessation exception to mootness," ER 9 n.3.  Thus, El Pueblo's extended argument that the district court improperly relieved the EPA of its "heavy burden" of demonstrating mootness, *id.* at 28, attacks a straw man.  Simply put, the district court did not err in applying *Rosemere* and this Court's mootness jurisprudence because it did not dismiss the claim for declaratory relief on mootness grounds.[7]

Nor did the court err in concluding that a declaratory judgment concerning EPA's past delays in processing Title VI complaints would serve no useful purpose because there was no live dispute between the parties as to whether § 7.115(c) creates a mandatory 180-day deadline.  *See* ER 16-17.  On appeal, El Pueblo contends that the court erred in failing to construe the allegations in its complaint broadly to encompass a claim that § 7.115(c) creates a mandatory deadline, Applt. Br. 23, but El Pueblo also concedes that its complaint failed to specifically allege that the EPA held an incorrect legal interpretation of that regulation, *id.* at 24.  Moreover, El Pueblo does not dispute the district court's essential finding that the focus of plaintiffs' complaint was the EPA's "failure to comply with § 7.115(c)," not its failure to acknowledge a mandatory

---

[7] As noted above, the district court distinguished *Rosemere* in making the fact-specific assessment that the allegations of possible future injury from hypothetical, future delays by EPA were much more speculative in this case than in that one, and holding that plaintiffs' request for an injunction regarding future Title VI complaints should be dismissed on standing and ripeness grounds.  ER 13.  The dismissal of that claim – which El Pueblo has not challenged – further distinguishes these two cases, as there is no indication in *Rosemere* that this Court would have allowed a claim solely for declaratory relief to proceed in the absence of a live claim for injunctive relief.  At a minimum, there is no indication in *Rosemere* that this Court would have held that a district court abused its discretion in dismissing a claim in such circumstances.

duty.  ER 17.  Although El Pueblo contends that the "EPA denied that it had a non-discretionary duty to act on El Pueblo's Title VI complaint within 180 days of accepting it for investigation," Applt. Br. 24, the portions of the EPA's answer and joint status report that El Pueblo cites contain nothing more than general denials of liability.  As the district court explained, "the Defendants' denials of liability in their answer and the joint scheduling report are just denials of liability, they are not denials that 40 C.F.R. § 7.115 creates a non-discretionary mandatory deadline."  ER 17 n.8.

In the end, El Pueblo's argument that the district court erred in dismissing its claim for declaratory relief founders not merely on the deferential standard of review applicable to such decisions, but on El Pueblo's inability to identify any useful purpose that would be served by entertaining such a claim.  In explaining that "Defendants will not be able to contest that it took an astounding 17 years to meet the 180 deadline in Plaintiffs' prior Title VI complaint," ER 16, the district court effectively declared that the EPA violated Section 7.115 in the past.  The court was under no obligation to issue a formal declaratory judgment addressing whether Section 7.115 establishes a mandatory 180-day deadline in all cases, particularly given its dismissal of the claims for injunctive relief on jurisdictional grounds.  For many of the same reasons that plaintiffs' request for an injunction regarding speculative, future Title VI complaints failed on standing and ripeness grounds, the district court properly exercised its ample discretion not to exercise jurisdiction over the claim for declaratory relief.

27

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

STUART F. DELERY
*Assistant Attorney General*
BENJAMIN W. WAGNER
*United States Attorney*

MARLEIGH D. DOVER

/s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH
(202) 514-1927
*Attorneys, Appellate Staff*
*Civil Division, Room 7244*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, DC  20530-0001*

DECEMBER 2013

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 7,156 words, excluding exempt material, according to the count of Microsoft Word.

/s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH
*Counsel for Defendants-Appellees*

**STATEMENT OF RELATED CASES**

Counsel for defendants-appellees are not aware of any related cases within the meaning of Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2013, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

 /s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH
*Counsel for Defendants-Appellees*