No. 13-15633

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____


PADRES HACIA UNA VIDA MEJOR and EL PUEBLO PARA EL AIRE Y
AGUA LIMPIO

*Plaintiffs-Appellants,*

v.

GINA MCCARTHY, Administrator of the U.S. Environmental Protection Agency,
and U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Defendants-Appellees,*

_____

On Appeal from the United States District Court for the
Eastern District of California
Case No. 1:11-cv-1094 AWI BAM
Hon. Anthony W. Ishii
_____

### REPLY BRIEF OF APPELLANT
### EL PUEBLO PARA EL AIRE Y AGUA LIMPIO

Christopher G. Winter                Brent Newell
CRAG LAW CENTER                      CENTER FOR RACE POVERTY AND
917 SW Oak St.                       THE ENVIRONMENT
Suite 417                            47 Kearney Street; Suite 804
Portland, OR 97205                   San Francisco, CA 94108
Telephone: (503) 525-2725            Telephone: (415) 346-4179 x304

December 20, 2013                    Attorneys for Plaintiff-Appellant El
                                     Pueblo Para El Aire Y Agua Limpio

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATUTORY AND REGULATORY BACKGROUND............................. 1

ARGUMENT ......................................................................................... 2

I.      Introduction........................................................................... 2

II.     The District Court did not Dismiss the Declaratory Relief Claim
        for Lack of Standing or Ripeness ......................................... 3

III.    The District Court Erred by Ignoring Binding Precedent in
        *Rosemere Neighborhood Association v. EPA* ...................... 5

        A.      The District Court did not Rely on the Declaratory Judgment
                Act and Erred by Misapplying Principles of Mootness ............ 6

        B.      EPA Failed to Demonstrate that Declaratory Relief is
                not Moot and will not Provide Effective Relief ........................ 9

CONCLUSION ............................................................................ 15

ADDENDUM

# TABLE OF AUTHORITIES

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..................................................... 2

*Brillhart v. Excess Insurance Co.*
    316 U.S. 491 (1942)................................................................................ 8

*Conservation Force, Inc. v. Jewell*
    733 F.3d 1200 (D.C. Cir. 2013)........................................................ 4, 5

*Daniels–Hall v. Nat'l. Educ. Ass'n.*
    629 F.3d 992 (9th Cir.2010) ............................................................... 14

*Friends of the Earth v. Laidlaw Environmental Services*
    528 U.S. 167 (2000)..................................................................... 10, 11

*Government Employees Insurance Co. v. Dizol*
    133 F.3d 1220 (9th Cir. 1998) ........................................................... 7,8

*Rosemere Neighborhood Association v. EPA*
    581 F.3d 1169 (9th Cir. 2009) ..................................................... *passim*

*Snodgrass v. Provident Life and Accident Insurance Co.*
    147 F.3d 1163 (9th Cir. 1988) ......................................................... 7, 8

*Super Tire Engineering Co. v. McCorkle*
    416 U.S. 115 (1974)..................................................................... 13, 14

## STATUTES

42 U.S.C. § 2000d ...................................................................... 1

42 U.S.C. § 2000d-1 ................................................................... 2

## REGULATIONS

40 C.F.R. § 7.35(b) ..................................................................... 2

40 C.F.R. § 7.115(e) .................................................................... 2

40 C.F.R. § 7.130(a) .................................................................... 2

40 C.F.R. § 7.130(b) .................................................................... 2

## RULES

Fed. R. Civ. P. 12(b)(1) ........................................................... 5, 7

**ADDENDUM**

Pursuant to Circuit Rule 28.2-7, Plaintiff and Appellant El Pueblo para el Aire y Agua Limpio ("El Pueblo") includes an Addendum bound with this brief.

## STATUTORY AND REGULATORY BACKGROUND

Because there is a pending action[1] in the U.S. District Court for the Northern District of California in which EPA has recently argued that it has discretion to not remedy violations of Title VI, El Pueblo respectfully alerts this Court to several important statutory and regulatory provisions to provide a full and complete representation of the contours of Title VI.  The Brief for Appellees ("EPA Br.") omitted reference to EPA's mandatory obligation to remedy discrimination under Title VI of the Civil Rights Act.  EPA described its implementing regulations and stated that if "EPA's efforts at achieving voluntary compliance do not succeed and the agency finds that a recipient has violated Title VI, EPA '*may* terminate or refuse to continue assistance.'"  EPA Br. at 4 (quoting 40 C.F.R. § 7.130(a)) (emphasis added).

Section 601 mandates that "[N]o person shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Furthermore, a "recipient shall not use

---

[1] *Garcia v. McCarthy*, No. 3:13-cv-03939 WHO (N.D. Cal.).

criteria or methods of administering its program or activity which have the effect of subjecting individuals to discrimination because of their race, color, national origin, or sex * * *."  40 C.F.R. § 7.35(b).  EPA "shall" first attempt to secure voluntary compliance before resorting to other remedies.  42 U.S.C. § 2000d-1.  If the recipient fails to come into voluntary compliance, EPA "shall" initiate the procedure to deny or rescind federal financial assistance.  40 C.F.R. § 7.115(e); 40 C.F.R. § 7.130(b).  EPA also has authority to use any other means authorized by law to secure compliance.  42 U.S.C. § 2000d-1; 40 C.F.R. § 7.130(a).

## ARGUMENT

### I.     Introduction.

The fundamental question for this Court is whether EPA may avoid a judicial declaration concerning its obligation to investigate and issue a preliminary finding within 180 days after EPA accepts a Title VI complaint, an obligation EPA denies.  Because the Supreme Court held in *Alexander v. Sandoval* that a person has no private right of action to remedy the racially discriminatory effects of programs or activities receiving federal financial assistance, the only remaining remedy for such discrimination is an administrative complaint filed with a federal agency.  532 U.S. 275, 293 (2001) (holding that Congress intended that agencies, not private persons, would enforce regulations promulgated to effectuate Title VI).  When EPA refuses to act on a complaint, then the complainant must either

patiently wait or expend its own resources to file an unlawful delay lawsuit to compel EPA action under the Administrative Procedure Act ("APA").

As demonstrated in this case and in *Rosemere Neighborhood Association v. EPA*, 581 F.3d 1169 (9th Cir. 2009) ("*Rosemere*"), EPA attempts to avoid judicial accountability by dismissing Title VI complaints once complainants file an unlawful delay lawsuits and then argues that the APA lawsuit is moot. The Ninth Circuit soundly rejected EPA's tactics in *Rosemere* while highlighting EPA's pattern and practice of EPA delay. Undeterred, EPA has renewed its efforts to avoid accountability by arguing here that (1) the district court appropriately dismissed El Pueblo's claim for prospective injunctive relief on standing and ripeness grounds; (2) the district court has discretion to dismiss El Pueblo's claim for declaratory relief under the Declaratory Judgment Act; and (3) the district court has discretion to dismiss the claim for declaratory relief because it would serve no useful purpose.

## II.    The District Court did not Dismiss the Declaratory Relief Claim for Lack of Standing or Ripeness.

EPA offers extensive argument to justify the dismissal of El Pueblo's claims for injunctive relief on standing and ripeness grounds. EPA Br. at 16-21. But El Pueblo does not appeal this issue. El Pueblo Br. at 8 n.2. EPA further incorrectly contends that the district court's ripeness and standing grounds for dismissing these claims "provides critical background and support for the court's discretionary

3

decision to dismiss plaintiffs' request for declaratory relief in this case." EPA Br. at 20-21. The district court's actual decision does not, however, rely on ripeness or standing as a basis for dismissing El Pueblo's claim for declaratory relief. The district Court first held that EPA's dismissal of the administrative Title VI complaint mooted the claim for declaratory relief because it "would [not] serve any useful purpose *or provide any effective relief*." ER 15 (emphasis added) (citing *In re American Federation of Government Employees*, 837 F.2d 503, 505 (D.C. Cir. 1988) (holding declaratory relief was "inappropriate" when post-complaint compliance mooted injunctive relief)).[2] The district court then held that El Pueblo did not set forth sufficient allegations in the complaint to warrant declaratory relief. ER 14-17.

Given the fact that El Pueblo only appeals the district court's dismissal of the declaratory relief claim, EPA unjustifiably relies on *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200 (D.C. Cir. 2013). In *Conservation Force*, big game hunters and hunting organizations' sought declaratory relief with respect to the U.S. Fish & Wildlife Service's alleged pattern of delay in issuing permits to import straight-

---

[2] EPA emphasizes the "no useful purpose" language in the opinion and ignores the district court's conclusion that declaratory relief would provide no effective relief, a mootness finding. EPA Br. at 21, 23-27.

horned markhor[3] hunting trophies.  The D.C. Circuit held that the claim was not ripe because the Fish & Wildlife Service had proposed a rule to allow the importation of markhor trophies without a permit.  *Conservation Force*, 733 F.3d at 1206-1207.  The court also held that the plaintiffs failed to demonstrate injury in fact to establish standing because no organization or hunter provided evidence that they intended to hunt markhor in the future.  *Id*. at 1207.

*Conservation Force* is inapposite because the District Court here did not dismiss El Pueblo's claims for declaratory relief on either ripeness or standing grounds.  ER 14-17.  Nor does EPA argue that El Pueblo lacks standing to seek declaratory relief or that the claim is not ripe.[4]  EPA Br. at 16-27.

## III.    The District Court Erred by Ignoring Binding Precedent in *Rosemere Neighborhood Association v. EPA*.

For the first time on appeal, EPA now argues that the district court has discretion under the Declaratory Judgment Act to dismiss El Pueblo's claim for declaratory relief.  EPA Br. at 22-23.  Before the district court, EPA filed a motion to dismiss under FED. R. CIV. P. 12(b)(1) arguing that this case was moot and thus the district court did not have subject matter jurisdiction.  *See* ER 3 (noting that motion was filed and was resolved under FED. R. CIV. P. 12(b)(1)).  EPA's position

---

[3] A markhor is a type of wild goat living in the Torghar hills along the Pakistan-Afghanistan border.  *Conservation Force*, 733 F.3d at 1202.

[4] El Pueblo will gladly provide supplemental briefing on those issues should the Court so desire.

has changed on appeal, and it now argues that the district court used its discretionary authority to deny the relief requested by El Pueblo, which presumes that the district court had subject matter jurisdiction over El Pueblo's claim for declaratory relief.

EPA's argument is without merit. The district court did not exercise this discretionary dismissal authority and instead dismissed the declaratory relief claim because it "would [not] serve any useful purpose *or provide any effective relief.*" ER 15 (emphasis added). Regardless, the district court must first take subject matter jurisdiction *before* exercising such discretion, and the cases on which EPA relies are inapposite because none involve the Administrative Procedure Act and the voluntary cessation doctrine.

EPA also claims the District Court has discretion to dismiss the declaratory relief claim when such relief serves no useful purpose. EPA Br. at 23-24 (citing *In re American Federation of Government Employees*, 837 F.2d at 505). EPA's argument simply restates the district court's error in ignoring *Rosemere* and refuses to recognize the current, live controversy between EPA and El Pueblo which provides the foundation for El Pueblo's request for declaratory relief here.

### A. The District Court did not Rely on the Declaratory Judgment Act and Erred by Misapplying Principles of Mootness.

EPA seeks to re-frame the District Court's decision to fit an entirely new legal theory: the district court dismissed the declaratory relief claim through

6

discretionary authority under the Declaratory Judgment Act.  EPA Br. at 22-23.

EPA never argued for dismissal on such grounds before the district court, and the

district court certainly did not rely on such authority in its opinion.  ER 14-17.

"A lawsuit seeking federal declaratory relief must first present an actual

case or controversy within the meaning of Article III, section 2 of the United States

Constitution."  *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220,

1222 (9th Cir. 1998) (*en banc*) ("*GEICO*").  "If the suit passes statutory and

constitutional muster," then the district court has discretion to entertain the action.

*Id.* at 1222.  When a district court has jurisdiction, it then has authority to dismiss

or entertain an action for declaratory relief, but a party opposed to the exercise of

such jurisdiction must object.  *Id*. at 1224-1225.  "Under the Declaratory Judgment

Act, a district court may decline to exercise jurisdiction over a declaratory action

even through subject matter jurisdiction is otherwise proper."  *Snodgrass v.

Provident Life and Accident Insurance Co.*, 147 F.3d 1163, 1166 (9th Cir. 1988).

Here, the district court granted EPA's Fed. R. Civ. P. 12(b)(1) motion.  ER

2.  The district court never invoked the Declaratory Judgment Act, nor did it

discuss or apply the standards for exercising its discretionary authority.  After

deciding it lacked subject matter jurisdiction, the district court could not, and

plainly did not, rely on the authority EPA claims exists.

Finally, none of the authority on which EPA relies would justify application

of such discretion in this case.  EPA Br. at 22-23 (citing *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942); *GEICO*, 133 F.3d 1220; *Snodgrass*, 147 F.3d 1163; *Leadsinger Inc. v. BMG Music Publishing*, 513 F.3d 522 (9th Cir. 2008)).  None of these cases involve the issue of whether an agency's post-complaint compliance moots declaratory relief as a remedy for a failure to act claim under the Administrative Procedure Act.  Instead, typical Declaratory Judgment Act cases involve claims in which an insurance company seeks a declaration that it has no duty to defend a third party.  *Snodgrass*, 147 F.3d at 1167.  Furthermore, dismissal of such cases involve consideration of, *inter alia*, whether a state court could adequately adjudicate declaratory relief claims, whether the parties are forum shopping, and whether dismissal would avoid duplicative litigation.  *Brillhart*, 316 U.S. at 495; *GEICO*, 133 F.3d at 1225 and n.5.  This case raises no such concerns.  Instead, this is a case to expedite agency action unlawfully withheld in conjunction with an uncontested pattern and practice of delay that "begs for an exception to mootness."  *Rosemere*, 581 F.3d at 1175 (quoting *Lucien v. Johnson,* 61 F.3d 573, 574-75 (7th Cir. 1995)).

Rather than relying on the Declaratory Judgment Act, the district court specifically applied mootness principles when it held that declaratory relief would not "provide effective relief."  ER 14-15 (citing *In re American Federation of Government Employees*, 837 F.2d 503, 505 (D.C. Cir. 1988) (holding declaratory

relief was "inappropriate" when post-complaint compliance mooted injunctive relief)). The district court thus misapplied a D.C. Circuit decision that predates *Rosemere* when holding that declaratory relief would provide no effective relief (a mootness conclusion) regardless of EPA's Declaratory Judgment Act protestations.

**B.    EPA Failed to Demonstrate that Declaratory Relief is not Moot and will not Provide Effective Relief.**

EPA argues that a declaration that would resolve the question of whether EPA has a non-discretionary duty to issue preliminary findings within 180 days of accepting a Title VI complaint would serve "no useful purpose." EPA Br. at 23-27. In support of its effort to avoid this Court's holding in *Rosemere*, EPA relies only on *American Federation of Government Employees*, the same 1988 D.C. Circuit decision cited by the district court. EPA Br. at 24; ER 15. EPA then restates the same rationale articulated by the district court and argues that El Pueblo did not demonstrate a live controversy.

EPA and the district court, not El Pueblo, commit the fundamental legal error at issue in this case by ignoring *Rosemere*. The district court has no discretion to cast aside El Pueblo's valid declaratory relief claim when EPA fails to meet its burden to demonstrate mootness. In a footnote, EPA tries to distinguish *Rosemere* by arguing that "there is no indication in *Rosemere* that this Court would have allowed a claim solely for declaratory relief to proceed in the absence of a live claim for injunctive relief." EPA Br. at 26 n.7. EPA misunderstands the

9

fundamental voluntary cessation inquiry. The question is whether EPA carries the heavy burden of demonstrating that its illegal conduct has ceased, not whether injunctive relief remains a viable remedy. *Rosemere*, 581 F.3d at 1173; *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000).

*Rosemere* did not make its holding contingent on what type of remedies were available. The Court stated in plain terms that it would not allow defendants to avoid judicial accountability and to return to their old ways, especially given EPA's pattern and practice of delay, which remains present during this continuing controversy. In *Rosemere*, EPA argued that prospective injunctive relief was not available under the APA and that a request for declaratory relief was moot. *Rosemere*, 581 F.3d at 1173 n.2. The *Rosemere* court explicitly stated that it would *not* determine "what remedies are available and appropriate * * * at this time" because "[w]here a court initially has jurisdiction under the APA * * * the existence of statutory limitations on the remedies that the court may impose does not defeat jurisdiction." *Id*. at 1173. If, as EPA argues, the test for mootness depends upon what relief is pleaded and available, the *Rosemere* court would have resolved EPA's arguments regarding prospective injunctive relief before resolving the question of mootness.

The burden therefore does not rest on El Pueblo to demonstrate that it will file another Title VI complaint. Rather, the burden rests on EPA to demonstrate El

Pueblo will not do so. *Id.* at 1174. The fact that El Pueblo says that it *may* file another Title VI complaint if the California Department of Toxic Substances Control issues a permit to expand the Kettleman Hills toxic waste dump matters not in the mootness analysis. El Pueblo has sufficiently alleged and declared facts to show its purpose and intent to oppose the toxic waste dump expansion, including filing another Title VI complaint. ER 233-236 (Complaint); ER 219-221 (Declaration of Maricela Mares-Alatorre). Accordingly, EPA must bear the burden to demonstrate that El Pueblo *will not file* a Title VI complaint or that EPA will comply with its legal obligations if El Pueblo does so. *Rosemere*, 581 F.3d at 1174.

The district court's failure to provide declaratory relief contravenes the essential purpose of the voluntary cessation doctrine: voluntary cessation "does not deprive a federal court of its *power to determine the legality*" of EPA's actions here or else "courts would be compelled to leave the defendant . . . free to return to its old ways." *Laidlaw*, 528 U.S. at 189 (internal citations omitted) (emphasis added). The district court erred when it failed to determine the legality of EPA's unconscionable 17-year delay resolving El Pueblo's Title VI complaint. The district court's error allows EPA to return to its old ways: more EPA delays while forcing El Pueblo to file another lawsuit to resolve the issue of whether EPA may lawfully relegate Title VI complainants to a state of purgatory.

El Pueblo did not concede, as EPA claims, that the district court's "no effective relief" holding was not error. EPA Br. at 24-27. Rather, El Pueblo argued in its Opening Brief that declaratory relief would provide effective relief given the on-going controversy between the parties and given EPA's denials of a duty to act and liability for failure to act. El Pueblo specifically argued that its complaint alleged that EPA violated a non-discretionary duty. El Pueblo Br. at 22-23. El Pueblo argued that EPA denied it had such a duty and specifically denied that it had violated "the agency's Title VI regulations." El Pueblo Br. at 24 (quoting ER 211 (Joint Status Report)). El Pueblo further argued that the district court disregarded allegations of EPA's pattern and practice of unlawful delay. *Id.* at 25.

These factual allegations and denials unquestionably warrant declaratory relief.[5] The question for this Court is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having

---

[5] EPA contends that El Pueblo conceded that the complaint failed to specifically allege that the EPA held an incorrect legal interpretation of its duty to act on a Title VI complaint. EPA Br. at 26. To the contrary, El Pueblo specifically argued that it pleaded facts sufficient to place the question of EPA's legal duty and EPA's violation of that duty before the district court and obtain declaratory relief. El Pueblo Br. at 22-26. Demanding that El Pueblo, in addition to alleging a failure to perform a non-discretionary duty, must also allege that an agency at some point has articulated an illegal interpretation of its implementing regulations elevates form over function and transgresses the liberal notice pleading standards in federal court. Hypertechnical pleading should not be grounds for refusing to hold an agency accountable.

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In a lawsuit over striking union workers at two New Jersey truck tire companies, the Supreme Court recognized that injunctive relief had become moot with the end of the strike, but held that declaratory relief remained appropriate because of the "extant and fixed policy directive of the State of New Jersey" that allowed for striking workers to receive economic benefits. *Id.* at 124. That policy position "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what *may* well be a substantial adverse effect on the interest of the petitioning parties." *Id.* at 122 (emphasis added). The Court observed that it "cannot be doubted that the availability of state welfare assistance for striking workers in New Jersey pervades every work stoppage . . . and is a factor lurking in the background of every incipient labor contract." *Id.* at 124.

Just as was the situation in *Super Tire*, the EPA's stated position that it may ignore pending Title VI complaints "has not evaporated or disappeared" and continues to cast its shadow on El Pueblo's interests to protect its members' civil rights in the face of an impending decision to allow the Kettleman Hills toxic

13

waste dump to expand.[6]  *See* ER 234-235 (Complaint ¶¶ 14, 16).  Under *Super Tire*, declaratory relief would resolve the continuing dispute that adversely affects El Pueblo as well as other current and future Title VI complainants.  "Where such state action or its imminence adversely affects the status of private parties, the courts should be available to render appropriate relief and judgments affecting the parties' rights and interests."  *Super Tire*, 416 U.S. at 125.  EPA offers no credible reason for why the economic interests at stake in *Super Tire* should receive greater solicitude in federal court than the civil rights of Americans suffering racial discrimination.

///

///

///

---

[6] Recent events further demonstrate the need for another Title VI complaint regarding the expansion of the Kettleman Hills toxic waste dump, which continues the discriminatory pattern of dumping toxic waste on only Latino communities in California.  Just recently, the California Department of Toxic Substances Control ("DTSC") made its tentative decision to issue the expansion permit, a contingency which the district court considered too speculative.  ER 13.  "DTSC has tentatively decided to grant the permit modification request and has prepared a draft permit."  Fact Sheet (Updated October 2013), California Department of Toxic Substances Control, available on the internet at http://www.dtsc.ca.gov/HazardousWaste/Projects/upload/ChemWaste_Kettleman_FS_Updated-October2013_Eng.pdf (last visited December 18, 2013).  This Court may take judicial notice of the contents of the DTSC's website.  *See Daniels–Hall v. Nat'l. Educ. Ass'n.*, 629 F.3d 992, 998–99 (9th Cir.2010).

## CONCLUSION

For the foregoing reasons, El Pueblo Para el Aire y Agua Limpio respectfully requests that the Court reverse the decision below and direct the District Court to enter an order denying EPA's motion to dismiss as moot.

Dated:  December 20, 2013          Respectfully submitted,


                                   /s Brent Newell
                                   Brent Newell
                                   CENTER ON RACE, POVERTY & THE
                                   ENVIRONMENT

                                   Christopher Winter
                                   CRAG LAW CENTER

                                   Attorneys for Plaintiff-Appellant El Pueblo
                                   para el Aire y Agua Limpio

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, Circuit Rule 32-1, and Circuit Rule 28-4, the attached brief is proportionally spaced, has a typeface of 14 points or more, and contains 3,444 words, exclusive of those parts of the brief exempted by Rule 32(a)(7)(B)(iii). I have relied on Microsoft Word's calculation feature to calculate the word limit.

Dated this 20th day of December, 2013.

/s Brent Newell
Brent Newell
CENTER ON RACE, POVERTY & THE
ENVIRONMENT

## CERTIFICATE OF SERVICE

I hereby certify that electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 20, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s Brent Newell
Brent Newell
CENTER ON RACE, POVERTY & THE ENVIRONMENT

# ADDENDUM

## <u>INDEX OF ADDENDUM</u>

Except for the following, all applicable regulations implementing Title VI of the Civil Rights Act are attached as an addendum to the Opening Brief of Appellant El Pueblo para el Aire y Agua Limpio.

**<u>Document</u>**                                                                                                 **<u>Page</u>**

42 U.S.C. § 2000d...................................................................................1

42 U.S.C. § 2000d-1...............................................................................2



UNITED STATES CODE SERVICE
Copyright © 2013 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-57, approved 12/9/13 ***

TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 21. CIVIL RIGHTS
FEDERALLY ASSISTED PROGRAMS

**Go to the United States Code Service Archive Directory**

*42 USCS § 2000d*

§ 2000d.  Prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**HISTORY:**
   (July 2, 1964, P.L. 88-352, Title VI, § 601, 78 Stat. 252.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**


Other provisions:
   **Equal opportunity in Federal employment.** For executive orders pertaining to equal opportunity in Federal employment, see notes to *42 USCS §§ 2000d-1* and *2000e*.
   **Nondiscrimination on the basis of race, sex, color, national origin, disability, religion, age, sexual orientation, and status as a parent in Federally conducted education and training programs.** Ex. Or. No. 13160 of June 23, 2000, *65 Fed. Reg. 39775,* provides:
   "By the authority vested in me as President by the Constitution and the laws of the United States of America, including sections 921-932 of title 20, United States Code; *section 2164 of title 10, United States Code*; section 2001 et seq., of title 25, United States Code; *section 7301 of title 5, United States Code*; and *section 301 of title 3, United States Code*, and to achieve equal opportunity in Federally conducted education and training programs and activities, it is hereby ordered as follows:
   "Section 1. Statement of policy on education programs and activities conducted by executive departments and agencies.
   "1-101. The Federal Government must hold itself to at least the same principles of nondiscrimination in educational



UNITED STATES CODE SERVICE
Copyright © 2013 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-57, approved 12/9/13 ***

TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 21. CIVIL RIGHTS
FEDERALLY ASSISTED PROGRAMS

**Go to the United States Code Service Archive Directory**

*42 USCS § 2000d-1*

§ 2000d-1.  Federal authority and financial assistance to programs or activities by way of grant, loan, or contract other than contract of insurance or guaranty; rules and regulations; approval by President; compliance with requirements; reports to Congressional committees; effective date of administrative action

Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 601 [*42 USCS § 2000d*] with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President. Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.

**HISTORY:**
   (July 2, 1964, P.L. 88-352, Title VI, § 602, 78 Stat. 252.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**